IN THE

## SUPERIOR COURT OF JUDICATURE,

FOR THE

## COUNTY OF SULLIVAN, JULY TERM,

**A. D. 1836.**

---

## THE PROPRIETORS OF CORNISH BRIDGE *vs*. RICHARDSON and a.

Toll bridges owned by corporations are to be taxed to the corporations.

Such bridges across the Connecticut river are taxable in this state.

TRESPASS.    The declaration alleged that the plaintiffs, on the second of January, 1835, were possessed of a certain toll-bridge, extending over and across the Connecticut river, from which the plaintiffs, before that time, were accustomed to obtain great profits by collecting tolls, &c.    But the defendants, contriving, &c. did, on said second day of January, with force and arms, enter upon said bridge, and sell and dispose of the same to their own use, whereby the plaintiffs were put to great expense, trouble and vexation, in the loss of tolls, and were obliged to pay a large sum to redeem the franchise, &c.

The defendants pleaded the general issue, and filed a brief statement, setting forth that they were selectmen of Cornish, and as such duly assessed a tax against the plaintiffs, and delivered the same to the collector of said town, who seized and sold the franchise of said corporation, according to law, to satisfy said tax.

At the trial, the defendants offered in evidence, to sustain their defence, an assessment of a tax against the plaintiffs for their bridge across the Connecticut river, from Cornish to Windsor ; to which the plaintiffs excepted, and contended that said bridge was not liable to taxation ; and that if any tax could lawfully be assessed on account of said bridge, it should have been against the stockholders, severally, for their respective shares in the corporation, and not against the corporation itself.

The court overruled the objection, and a verdict having been returned for the defendants, the plaintiffs moved for a new trial.

*J. H. Hubbard, Freeman,* and *H. Hubbard,* for the plaintiffs.

*Wilson,* and *Harvey Chase,* for the defendants.

PARKER, J.    Prior to 1830 no provision existed in this state for the taxation of toll bridges.    The act of July 3d, of that year, to establish the rates at which polls and rateable estates shall be valued in making and assessing direct taxes, placed toll bridges along with mills, wharves and ferries, to be estimated at one twelfth part of their net yearly income after deducting repairs ; and they were of course to be taxed to the owner, whether individual or corporation, no provision having been made for the taxation of the shares in case they were owned by a corporation.    This is made perfectly apparent by the act of June 22, 1832, chap. 86, which enacts that " whenever any tax has been or may be ' lawfully assessed against any bridge, canal, or other com-'pany incorporated by law with power to receive toll, or ' against any person or persons holding such franchise, the ' franchise of such corporation or person, with all the privi-'leges and immunities thereof, so far as relates to the right ' of demanding and receiving toll, shall be liable to the sat-

' isfaction and payment of such tax, and all legal fees and
' expenses thereon arising, and may be taken and sold by
' the collector having such tax," &c.

The act of January 4, 1833, chap. 108, repealing the act
of July 3, 1830, and providing generally for an appraisal of
rateable estate, did not change the mode of taxing toll bridges
in any other respect. It is true, it enumerates, among the
objects of taxation, after bank stock, marine and fire insur-
ance stock, turnpike shares, &c., " all other stock in any
corporation or company on which an income is received or
dividend made," &c. This of itself is broad enough to in-
clude the shares of a bridge corporation, were there nothing
else. But the same statute had previously enacted that toll
bridges should be assessed and invoiced in the towns where
the same are located, and be set down in a separate column;
which shows that the bridges were to be invoiced and as-
sessed, instead of the shares in the corporation, and of course
that the taxation was to be to the corporation instead of the
shareholders. Besides, there is no repeal of the act of 1832,
providing for the collection of the tax by a sale of the fran-
chise; and it could hardly have been intended that the en-
tire franchise should be sold for the non-payment of the
taxes of any individual stockholder.

The clause for the taxation of shares in corporations,
above cited, was intended to include matters not before
enumerated and provided for, and not to annul a prior part
of the same section, which it must be held to do if it was
construed to include bridge corporations; for in such case
the bridge would not be taxed, but the shares; and accord-
ing to the usual rule of taxation, shares in a corporation are
to be taxed to the owner, in the town where he lives, if in
this state; whereas toll bridges, by the special provision of
the act of 1833, before cited, are to be invoiced and assessed
in the towns where the same are located.

A question has been suggested, rather than argued, wheth-
er bridges upon Connecticut river are within the statute,

because such bridges it is said are partly within the state of Vermont. It is not necessary, in order to the taxation of a bridge under the act, that it should all be within a single town. There is nothing exempting the bridges over the Connecticut from its operation; and although it is true that a portion of the western abutment of all such bridges is within the limits of Vermont, and the toll house may be actually there situate, we cannot think that it was the intention of the legislature to exclude such bridges from taxation on that account, while others are taxed. The terms of the act are general. Charters to build such bridges and take tolls, must be granted here. The waters of the river are within the jurisdiction of this state, and of course nearly all the structure; and the bridges, being substantially within the limits of this state, would probably never be deemed a proper subject of taxation in Vermont, even if a charter had also been procured there to authorize the erection.

*Judgment for the plaintiffs.*